United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

13
ANDRE JOSEPH LAMOTHE,                           No. C 04-3395 CW

14
          Petitioner,                           ORDER DENYING
                                                PETITION FOR WRIT
15
     v.                                         OF HABEAS CORPUS

16
NICHOLAS CADEMARTORI, Chief Probation

17
Officer,

18
          Respondent.

19
_____/

20

21       Petitioner Andre Joseph LaMothe, on probation in the County of

22  Santa Clara in the constructive custody of Respondent Nicholas

23  Cademartori, Chief Probation Officer, has filed this petition for a

24  writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Respondent was

25  ordered to show cause why the writ should not be granted and has

26  filed an answer supported by a memorandum of law, the State trial

27  record and the unpublished opinion of the California Court of

28  Appeal.  Petitioner filed a traverse.  Having considered all of the

papers filed by the parties, the Court DENIES the petition for writ

of habeas corpus.

BACKGROUND

I.   Factual Background

    The following facts are taken from the unpublished opinion of

the Sixth Appellate District of the California Court of Appeal in

People v. LaMothe, H023403 (Mar. 6, 2003), affirming in part and

reversing in part the judgment of conviction.

> Petitioner met Jennifer Huber in August 1998.  They dated
> for awhile.  Then, Petitioner moved into the same condominium
> complex in which Ms. Huber lived.  While maintaining her own
> condominium, Ms. Huber moved in with Petitioner.
>
> On October 7, 1999, Petitioner and Ms. Huber had a verbal
> altercation, which resulted in Petitioner asking Ms. Huber to
> return the keys to his condominium.  Petitioner removed the
> garage remote control from Ms. Huber's car and they both left
> Petitioner's home.  Later that day, Ms. Huber contacted
> Petitioner at the gym.  They immediately began arguing.  They
> left the gym together and drove to Petitioner's condominium.
> Petitioner parked his car in the middle of the garage so that
> Ms. Huber could not park there.  Ms. Huber parked her car in
> the street and entered the garage on foot.  She told
> Petitioner that she wanted her clothes and belongings out of
> his home.  They began to argue.
>
> Petitioner and Ms. Huber yelled and cursed at each other
> and then Petitioner slapped Ms. Huber.  According to Ms.
> Huber, Petitioner grabbed her arms and shook her back and
> forth.  He pushed her to the ground and kicked her in the
> thighs, stomach, and head.  Then, Petitioner grabbed Ms.
> Huber's hair and dragged her to the side of his car.  While
> holding her hair, he opened the car door and retrieved a can
> of pepper spray.  He sprayed Ms. Huber on the chest and face.
> Petitioner let go of Ms. Huber's hair and she stood up.
> However, Petitioner continued to spray her on the front of the
> legs and on her shirt and back as she began to leave.  Ms.
> Huber went to her car and drove a short distance beyond the
> condominium complex where she called "911."  An ambulance
> arrived and took her to hospital.  Her skin was blistered
> around her eyes and chest and small clumps of hair were
> missing from her scalp.  Also, Ms. Huber had two bumps on her
> head.
>
> Police went to Petitioner's home and found three guns in

2

the living quarters and a can of pepper spray in the garage.
Petitioner was arrested and released on bail.  Ms. Huber
sought and was granted a temporary restraining order, which
forced Petitioner to stay at his parents' home for five days.
Petitioner and Ms. Huber reinitiated their relationship in
November 1999, and broke up again in May 2000.

On April 19, 2000, the court issued a "Protective Order
in Criminal Proceedings."  The order enjoined appellant from
annoying, harassing, striking, threatening, sexually
assaulting, battering or otherwise disturbing the peace of Ms.
Huber.  Petitioner moved to Danville after he and Ms. Huber
broke up.

In November 2000, Ms. Huber attended a birthday party at
a friend's house.  This friend, Marcus Campagna, lived with
his wife in the same area in which Petitioner's new residence
was located.  When Ms. Huber left the house she noticed that
Petitioner was sitting in his car across the street.
According to Ms. Huber, after she got into her car appellant
followed her.  He flashed his headlights and "tailgated" her
as she switched lanes.  Ms. Huber attempted to get away from
Petitioner by driving at speeds up to 120 miles per hour.  At
one point, Petitioner pulled his car alongside Ms. Huber and
swerved his car, forcing her to move into the next lane.  Ms.
Huber called "911."  She stayed on the phone with the operator
for half an hour until the Highway Patrol pulled over both
cars.  When Ms. Huber and Petitioner passed the Highway Patrol
Officers who were parked on the side of the road, appellant
was approximately two car lengths behind Ms. Huber.  Both cars
were traveling at 85 miles per hour.

On December 29, 2000, the District Attorney for the
County of Santa Clara filed information No. C0089886 charging
Petitioner with five counts, two of which related to the
November "freeway incident." On January 9, 2001 the district
attorney filed a motion to consolidate that information with
information No. C9948874.  On January 19, 2001, the motion for
consolidation was granted.

At trial Petitioner testified that during the October 7
incident in his garage he asked Ms. Huber to leave "over and
over again."  However, she continued to scream and became
hysterical and pleaded to talk with him.  Eventually, he used
the pepper spray.  He wanted to "defuse the situation."  He
claimed, however, that he shot the spray at the ground and the
wall.  Only after he told Ms. Huber that he would spray her if
she did not leave did he fire a shot of spray at her leg, her
hip area and across her shoulder.

3

II.  Procedural History

Petitioner was charged by consolidated information with one count of inflicting corporeal injury on a spouse or cohabitant (count one); assault by means of force likely to produce great bodily injury (count two); unauthorized use of tear gas (count three); threats to commit a crime resulting in death or great bodily injury (count four); stalking while a court order was in effect (count five); dissuading a victim or witness from testifying (counts six and seven); and violation of a protective order (counts eight and nine).

Based on the October 7, 1999, incident (the garage incident) and the November 1, 2000, incident (the freeway incident), the court found Petitioner guilty of inflicting corporeal injury on a spouse or cohabitant (count one), unauthorized use of tear gas (count three) and violation of a protective order (count eight). Count four was dismissed and the court found Petitioner not guilty on counts two, five, six, seven and nine.  Petitioner was sentenced to time served and placed on formal probation for five years.

On August 7, 2001, Petitioner filed a timely notice of appeal with the California Court of Appeal.  On February 27, 2002, Petitioner filed a petition for a writ of habeas corpus with the court of appeal.  On direct appeal, the court reversed the conviction on count eight and affirmed the convictions on counts one and three.  The court of appeal denied the petition for writ of habeas corpus and petition for rehearing.  On May 21, 2003, the California Supreme Court denied, without comment, the petition for rehearing regarding the direct appeal and a petition for a writ of

1  habeas corpus.

2       On May 17, 2004, Petitioner filed this petition for a writ of

3  habeas corpus attacking his conviction on counts one and three.

4                            LEGAL STANDARD

5       A federal court may entertain a habeas petition from a State

6  prisoner "only on the ground that he is in custody in violation of

7  the Constitution or laws or treaties of the United States."

8  28 U.S.C. § 2254(a).

9       Under the Antiterrorism and Effective Death Penalty Act

10 (AEDPA), a district court may not grant a petition challenging a

11 State conviction or sentence on the basis of a claim that was

12 reviewed on the merits in State court unless the State court's

13 adjudication of the claim: "(1) resulted in a decision that was

14 contrary to, or involved an unreasonable application of, clearly

15 established federal law, as determined by the Supreme Court of the

16 United States; or (2) resulted in a decision that was based on an

17 unreasonable determination of the facts in light of the evidence

18 presented in the State court proceeding."  28 U.S.C. § 2254(d).

19      A decision is contrary to clearly established federal law if

20 it fails to apply the correct controlling authority, or if it

21 applies the controlling authority to a case involving facts

22 materially indistinguishable from those in a controlling case, but

23 nonetheless reaches a different result.  Clark v. Murphy, 331 F.3d

24 1062, 1067 (9th. Cir. 2003).

25      An unreasonable application of federal law occurs when the

26 State court identifies the correct governing legal principle, but

27 unreasonably applies that principle to the facts.  Id.  An

28                                  5

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

unreasonable application of federal law is different from an incorrect application of federal law. Id. Relief is not proper where the State court decision is "merely erroneous." Early v. Packer, 537 U.S. 3, 10 (2002). The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is the holdings of the Supreme Court as of the time of the relevant State court decision. Williams v. Taylor, 529 U.S. 362, 412 (2000). Circuit law may be persuasive authority for purposes of determining whether a State court decision is an unreasonable application of Supreme Court law. Clark, 331 F.3d at 1070-1071.

To determine whether the State court's decision is contrary to, or involved an unreasonable application of, clearly established law, a federal court looks to the decision of the highest State court that addressed the merits of a petitioner's claim in a reasoned decision. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Greene v. Lambert, 288 F.3d 1081, 1088 (9th Cir. 2002); Bailey v. Newland, 263 F.3d 1022, 1028 (9th Cir. 2001); LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000).

An unreasonable determination of the facts occurs where the State court fails to consider and weigh highly probative, relevant evidence, central to petitioner's claim, that was properly presented and made part of the State court record. Taylor v. Maddox, 366 F.3d 992, 1005 (9th Cir. 2004). A federal court gives deference to a State court's factual determinations. Lambert v. Blodgett, 393 F.3d 943, 968 (9th Cir. 2004). Title 28 U.S.C. § 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant

6

1   shall have the burden of rebutting the presumption of correctness

2   by clear and convincing evidence."

3       If constitutional error is found, habeas relief is warranted

4   only if the error had a "substantial and injurious effect or

5   influence in determining the jury's verdict." <u>Brecht v.</u>

6   <u>Abrahamson</u>, 507 U.S. 619, 638 (1993).

7                                 DISCUSSION

8       Petitioner raises six grounds for habeas relief:  (1) The

9   court of appeal should have ordered a new trial because

10  subsequently discovered evidence showed that Ms. Huber gave

11  perjured testimony; (2) The trial court denied Petitioner the

12  opportunity to make an opening statement and a meaningful closing

13  argument; (3) The trial court erred in excluding evidence of a

14  conspiracy between Ms. Huber and a third-party, Marcus Campagna;

15  (4) The trial court erred by admitting evidence of an alleged hand

16  gesture made by Petitioner towards Ms. Huber at the preliminary

17  hearing; (5) The trial court erred by consolidating charges from

18  two separate informations; and (6) The trial court improperly

19  placed the burden of proof on Petitioner as to the issue of self-

20  defense.[1]

21  _____

22      [1] Petitioner cites specific federal law for two of his claims:
    (1) The appellate court improperly denied a request for a new trial
23  based on the subsequently discovered evidence in violation of the
    Fourteenth Amendment; (2) Petitioner was denied a closing argument
24  in violation of the Sixth and Fourteenth Amendments.  In regards to
    the remaining grounds for habeas relief, Petitioner claims
25  generally that substantive and procedural errors constituted actual
    prejudice and violated his federal constitutional rights to due
26  process, to a fair trial, to present a defense and to the
    meaningful assistance of counsel.  In the interest of justice, the
27  Court has identified, where necessary, the federal authority
    relevant to Petitioner's claims.

28                                 7

United States District Court

For the Northern District of California

I.    Subsequently Discovered Evidence of Perjured Testimony

Petitioner contends that evidence discovered after trial shows that Ms. Huber, the main prosecution witness, gave perjured testimony.  Respondent argues, among other things, that Petitioner's claim is not cognizable on federal habeas corpus review and that, even if a constitutional violation occurred, the error was harmless.  Without conceding his claim, Petitioner fails to answer Respondent's arguments.

As subsequently discovered evidence, Petitioner is apparently referring to the declarations of Charlene Gallegos and Guy Mori.  Ms. Gallegos' declaration states that, in the fall of 2000, she was involved in a relationship with Marcus Campagna, a friend of Ms. Huber.  Mr. Campagna informed Ms. Gallegos that he and Ms. Huber were going "Andre Hunting."  This meant that they were attempting to get Petitioner in trouble with the law by forcing him to have contact with Ms. Huber in violation of a restraining order.

Mr. Mori's declaration states that he and Ms. Huber had romantic relationship from May 21, 2000 until September 25, 2001.  Mr. Mori declares that Ms. Huber gave false testimony about incidents which occurred on October 23, 2000, after Petitioner saw her at a TGI Friday's restaurant.  Mr. Mori further claims that Ms. Huber lied when she testified that she moved to Arizona because she was afraid of Petitioner.  Finally, Mr. Mori states that Ms. Huber admitted to accusing Petitioner falsely.  He claims that Ms. Huber made this admission by way of a threat to Mr. Mori that she would do the same to him in an effort to manipulate him.

Petitioner's habeas petition with the California court of

United States District Court
For the Northern District of California

appeal sought a new trial based on these declarations.  The court
denied the petition without comment.  Where a State court gives no
reasoned explanation of its decision on a petitioner's federal
claim, a review of the record is the only means of deciding whether
the State court's decision was objectively reasonable.  Himes, 336
F.3d at 853; Greene, 288 F.3d at 1088; Newland, 263 F.3d at 1028;
Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When
confronted with such a decision, a federal court should conduct "an
independent review of the record."  Himes, 336 F.3d at 853;
Delgado, 223 F.3d at 982.

Petitioner asserts that the newly discovered evidence supports
the defense theory that Ms. Huber was obsessed with Petitioner,
distraught over him leaving her and initiated a conspiracy falsely
to accuse him of various crimes.  Essentially, Petitioner claims
that the evidence establishes Ms. Huber's perjury and undermines
her credibility as the chief prosecution witness.  Citing Napue v.
Illinois, 360 U.S. 264, 269 (1959), Petitioner seeks federal habeas
relief and a new trial because he asserts that a conviction
obtained through the use of false testimony constitutes a violation
of a defendant's right to a fair trial under the Fourteenth
Amendment.

Respondent correctly points out that Napue stands for the
proposition that it is unconstitutional for a prosecutor knowingly
to use false testimony to obtain a conviction.  360 U.S. at 269;
Hayes v. Brown, 399 F.3d 972, 978 (9th Cir. 2005).  The Supreme
Court has never held that due process is offended by a conviction
resting on perjured testimony where the prosecutor did not know of

United States District Court
For the Northern District of California

the testimony's falsity at trial.  <u>Jacobs v. Scott</u>, 513 U.S. 1067, 619-20 (1995) (Stevens, J., dissenting) (citing <u>Durley v. Mayo</u>, 351 U.S. 277, 290-91 (1956)).  Thus, absent a showing that the prosecutor knew Ms. Huber's testimony was false, Petitioner cannot successfully claim that the court of appeal's decision to deny a new trial was contrary to, or involved an unreasonable application of, clearly established federal law.

An independent review of the record also fails to demonstrate that there was an unreasonable determination of the facts.  A federal court may not disturb a State court's factual findings unless, after review of the State court record, it determines that the State court was not merely wrong, but actually objectively unreasonable.  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003). Even assuming the newly discovered evidence undermines Ms. Huber's credibility, the State trial court in its opinion on direct appeal reasonably found sufficient evidence to support Petitioner's convictions relating to the October 7, 1999 garage incident.  In regards to the conviction for inflicting corporeal injury on a cohabitant, San Jose Police Officer Thomas Boyle testified that Petitioner had explained and demonstrated to him how Petitioner pushed Ms. Huber out of the garage with his foot.  (RT 244).  At trial, Petitioner also admitted:  "I put my foot up and she charged into me, and my foot blocked her motion.  Simple as that." (RT 467).  Ms. Huber's injury was also corroborated by San Jose Police Officer Eric Dragoo who testified that he examined Ms. Huber immediately after the garage incident and found a bump on the left side of her head and a bruise on her right forearm.  (RT 258-59).

**United States District Court**
For the Northern District of California

The State court's factual finding is substantiated by Petitioner's admission that he shot Ms. Huber with pepper spray. Petitioner admitted spraying Ms. Huber's leg, hip, shoulder and armpit.  (RT 407-08).  Commenting on the incident Petitioner stated: "I used the pepper spray because I knew that if I were to physically take her out of the garage then Jennifer would be able to get her hands on me again."  (RT 406).  Officer Boyle testified that Petitioner admitted spraying Ms. Huber three to four times. (RT 244).  Moreover, the trial court's conclusion that Petitioner was not using the pepper spray in self defense was reasonable given the insufficient evidence of an imminent danger and the fact that Petitioner gave non-self-defense reasons for spraying Ms. Huber ("I just wanted to defuse the situation.  I didn't want anymore touching, and I just wanted her to go away.  I didn't want to be around her anymore."  (RT 405)).

Even if the newly discovered evidence casts doubt on Ms. Huber's testimony, the declarations do not otherwise contradict the evidence used to convict Petitioner for the garage incident.  The declarants apparently address an alleged conspiracy which arose several months after October 7, 1999.  Consequently, the trial court's determination of the facts necessary for Petitioner's convictions was reasonable.  Furthermore, even if the discovery of new evidence impeaching a prosecution witness' credibility were grounds for habeas relief, the evidence proffered here is insufficient to cast substantial doubt on the reasonableness of the State courts' findings.  Accordingly, the new evidence would not have a substantial effect on the verdict.  <u>Brecht</u>, 507 U.S. at 673.

United States District Court

For the Northern District of California

II.  Denial of Opportunity for Opening and Meaningful Closing

A.  Opening Statement

Petitioner claims he was denied the opportunity to make an opening statement.  Respondent argues Petitioner fails to show a denial in the record and that Petitioner's claim is not cognizable in a federal habeas petition.

The Supreme Court has limited the constitutional right to oral argument to final argument or summation.  Herring v. New York, 422 U.S. 853, 863 n.13 (1974).  The Court declined to imply the existence of "a constitutional right to oral argument at any stage of the trial or appellate process."  Id.  Although the Constitution requires that trials be fairly conducted and that "guaranteed rights of defendants be scrupulously respected," McGautha v. California, 402 U.S. 183, 221 (1971), the Supreme Court has never held that an opening statement by the defendant is such a guaranteed right.  The Fifth and Eleventh Circuits have suggested that the failure to afford a defendant the opportunity to make an opening statement can constitute error.  United States v. Breedlove, 576 F.2d 57, 60 (5th Cir. 1978); United States v. Zielie, 734 F.2d 1447, 1455 (11th Cir. 1984), cert. denied, 469 U.S. 1189 (1985).  The Court need not consider such case law here because Petitioner has failed to establish he was denied the opportunity to make an opening statement.

The California Court of Appeal observed:

On the first day of trial, the court asked the district attorney if he wished to make an opening statement and the district attorney elected to waive it.  The court did not invite defense counsel to make an opening statement at the time and defense counsel did not request so to do.

United States District Court

For the Northern District of California

Penal Code section 1093, subdivision (b) provides that defense counsel may make an opening statement either immediately after the district attorney's opening statement or after the People's case has been presented.

After the People had rested, the court said to defense counsel, "okay, you may proceed, Mr. Defilippis. What's your pleasure?" To which defense counsel replied "Actually my pleasure would be to break until tomorrow morning.

Shall we call it a day? I needed to break at 4:00." Upon reconvening the next morning, the court noted, "People have rested. You may proceed, Mr. Defilippis." Defense counsel called his first witness.

Appellant presents no facts to support his contention that the court prohibited defense counsel from making an opening statement. It appears from the record that defense counsel either chose not to make an opening statement or simply forgot to make one.

People v. LaMothe, H023403, at 5; (RT 285, 292).

The appellate court correctly determined that the trial court did not prohibit Petitioner from making an opening statement. Furthermore, Petitioner never asked to make an opening statement at any stage in the trial, or objected that he was not allowed to do so. Although the trial court did not invite Petitioner to make a statement at the beginning of the trial, the court did permit Petitioner the opportunity to open at the conclusion of the prosecution's case-in-chief. The court called for Petitioner to proceed and conferred complete discretion on counsel by asking, "What's your pleasure?" Id. The court of appeal also reasonably concluded that, by choosing to call his first witness on the following day, counsel either "chose not to make an opening statement or simply forgot to make one." Id.

Petitioner's claim is not saved by his reliance on section

13

1093(b) of California Penal Code,[2] which affords defendants the choice of making an opening statement immediately after the prosecution does so or reserving the opening until after the prosecution presents its case.  It is not the province of federal courts to grant habeas relief for errors of State law.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1992); Belmontes v. Brown, 414 F.3d 1094, 1121 (9th Cir. 2005).  Nor is the Court convinced that such an error, if it were committed, was so egregious as to deny Petitioner fundamental fairness at trial, especially where, as here, Petitioner never requested an opening but was given the opportunity to make a statement nevertheless.

    B.  Closing Argument

    Petitioner claims the trial court denied him the opportunity to make a complete, meaningful closing argument.  He asserts that certain court-imposed restrictions on closing arguments were violative of the Sixth and Fourteenth Amendments.  Respondent argues that the trial court's actions were consistent with established precedent, that Petitioner was not precluded from making a closing argument on the counts for which he stands convicted and that any error was harmless.

_____

    [2] Penal Code section 1093 states in pertinent part:

    the trial shall proceed in the following order, unless
    otherwise directed by the court . . . (b) The district
    attorney, or other counsel for the people, makes an opening
    statement in support of the charge.  Whether or not the
    district attorney, or other counsel for the people, makes an
    opening statement, the defendant or his or her counsel may
    then make an opening statement, or may reserve the making of
    an opening statement until after introduction of the evidence
    in support of the charge.

14

United States District Court

For the Northern District of California

1    It is well-established that a criminal defendant has a

2 constitutional right to make a closing argument.  Yarborough v.

3 Gentry, 540 U.S. 1, 4 (2003) (citing Herring, 422 U.S. at 865)).

4 However, the Supreme Court has also explained that trial courts

5 have discretion in controlling closing arguments:

6         This is not to say that closing arguments in a criminal case
          must be uncontrolled or even unrestrained.  The  presiding
7         judge must be and is given great latitude in controlling the
          duration and limiting the scope of closing summations.  He [or
8         she] may limit counsel to a reasonable time and may terminate
          argument when continuation would be repetitive or redundant.
9         He [or she] may ensure that argument does not stray unduly
          from the mark, or otherwise impede the fair and orderly
10        conduct of the trial.  In all these respects he [or she]
          must have broad discretion.

11
Herring, 422 U.S. at 862(alterations in original).
12
13        Here, the court of appeal observed the following:

14        After the presentation of evidence, the court addressed
          counsel as follows: "Let's proceed to final argument on the
15        matter.  What I would like counsel to do is, and I may direct
          you during the course of that argument, is to let's just go
16        down each count.

17        I would like to get the People's position as to the state of
          the evidence as to each count, and then I would request that
18        you respond to it, Mr. Defillippis.

19        And  then I think that the most efficient way to resolve the
          matter is for the Court to simply rule on each count as we go
20        through it.

21        Appellant's counsel was given the opportunity to set forth his
          arguments on counts, one, three, five, six and seven.  The
22        court did not ask for statements on counts two, four and nine
          because it had already determined there was insufficient
23        evidence to convict appellant on those counts.

24        As to count eight, the court stated, "There is simply nothing
          that could be said that's going to dissuade me from thinking
25        that this defendant did, in fact, follow that woman on the
          freeway.

26        I believe that the officer that testified - I do not believe
          that it was a coincidence that he was driving south and ran
27        into her, and it was light traffic and that they just happened

28                                      15

1        to be in traffic during the sequence of events.

2        That is a violation of the protective order, and I think it
         has been proved beyond a reasonable doubt that defendant on
3        November 1st, year 2000, violated section 273.6(a)."

4    People v. LaMothe, H023403, at 6.

5        As for count three, the trial court stated:

6        And I presume that there is no issue that self-defense -- the
         evidence is certainly insufficient to justify a finding that
7        it was used in any form of self-defense.  It was simply used
         in my view inappropriately.
8
         Is there some technical defense to that Count that the defense
9        intends to raise?

10   (RT 516).

11       The court of appeal concluded:

12       We cannot say that the trial court exceeded its discretion in
         restricting counsel to a non-contiguous summation of the case.
13       That being said, once defense counsel was restricted to a
         "count by count summation closing argument" he was entitled to
14       address each count.  While appellant was allowed to address
         the court regarding counts one, three, five, six and seven,
15       the court ruled on count eight without hearing argument
         from counsel.
16
         However, since we have determined that appellant's conviction
17       on count eight cannot stand for the reasons outlined below, we
         need not address this matter further.
18

19   Id.

20       Because Herring confers broad discretion on the trial court to

21   control the scope, duration, timing and order of closing arguments,

22   422 U.S. at 862, the appellate court reasonably found that the

23   trial court did not err in restricting Petitioner to a count-by-

24   count closing.  Moreover, Petitioner made a closing argument on

25   each count (one and three) for which he now seeks relief.  Although

26   the trial court restricted Petitioner's argument on count three to

27   whether there was a "technical defense" (RT 516), this judicial

28
                                    16

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

latitude is permissible under <u>Herring</u> to limit the scope of the argument when "continuation would be repetitive or redundant" or otherwise "stray unduly from the mark." <u>Id.</u>

The trial court's statement that it was "under no obligation to even allow [Petitioner] to make a closing argument" was mistaken. (RT 517-18). The trial court did decline to hear argument on count eight. However, the court of appeal reversed the conviction as to count eight on other grounds, rendering the issue moot.

Therefore, the court of appeal reasonably applied clearly established federal law.

III. Exclusion of Conspiracy Evidence

Petitioner argues that evidence of a conspiracy between Ms. Huber and Marcus Campagna to harass and falsely accuse him was improperly excluded. He contends that, if allowed, the evidence would have impeached Ms. Huber's honesty and created a reasonable doubt whether Petitioner committed any crime. Respondent asserts that Petitioner has failed to establish a federal constitutional right to have such evidence admitted and that the evidence itself is not relevant to the convictions at issue.

"The Supreme Court has made clear that the erroneous exclusion of critical, corroborative defense evidence may violate both the Fifth Amendment due process right to a fair trial and the Sixth Amendment right to present a defense." <u>Depetris v. Kuykendall</u>, 239 F.3d 1057, 1062 (9th Cir. 2001) (citing <u>Chambers v. Mississippi</u>, 410 U.S. 284, 294 (1973)). Still, a defendant's right to present relevant evidence is not unlimited, but rather is subject to

17

**United States District Court**
For the Northern District of California

1   reasonable restrictions.   <u>Taylor v. Illinois</u>, 484 U.S. 400, 410

2   (1988).   States have broad latitude under the Constitution to

3   establish rules excluding evidence from criminal trials.   <u>United</u>

4   <u>States v. Scheffer</u>, 523 U.S. 303, 308 (1998).   The defendant must

5   comply with these rules of procedure and evidence "designed to

6   assure fairness and reliability."   <u>Chambers</u>, 410 U.S. at 302

7   (citations omitted).

8   Petitioner sought to have Charlene Gallegos testify regarding

9   a conspiracy between Ms. Huber and Mr. Campagna.   Specifically,

10  Petitioner claims Ms. Gallegos would have testified that Mr.

11  Campagna regularly told her he was going "Andre Hunting" at the

12  behest of Ms. Huber to harass Petitioner and set him up for various

13  crimes.   Petitioner concedes that it was within the trial court's

14  discretion to exclude this testimony under California Evidence Code

15  section 352.[3]   Further, the testimony proffered was hearsay.

16  Nevertheless, Petitioner asserts that it should have been admitted

17  as testimony by a co-conspirator under section 1223.[4]   Affirming

18  _____

19      [3] Section 352 states:

20      The court in its discretion may exclude evidence if its
        probative value is substantially outweighed by the probability
21      that its admission will (a) necessitate undue consumption of
        time or (b) create substantial danger of undue prejudice, of
22      confusing the issues, or of misleading the jury.

23      [4] Section 1223 states:

24      Evidence of a statement made against a party is not made
        inadmissible by the hearsay rule if (a) The statement was made
25      by the declarant while participating in a conspiracy to commit
        a crime or civil wrong and in furtherance of the objective of
26      that conspiracy; (b) The statement was made prior to or during
        the time that the party was participating in that conspiracy;
27      and (c) The evidence is offered either after admission of

28                                  18

the decision of the trial court to exclude this evidence  as

hearsay, the appellate court noted that Ms. Huber was not a "party"

but a witness.  Furthermore, Ms. Gallegos' statements could not

meet the hearsay exception because section 1223 requires

independent evidence of a conspiracy and, after reviewing the

record, the court of appeal found no such evidence.

If the State court only considered State law, the federal

court must ask whether State law, as explained by the State court,

is "contrary to" clearly established governing federal law.

Lockhart v. Terhune, 250 F.3d 1223, 1230 (9th Cir. 2001).  It is

not.  However, even evidence inadmissible under evidence rules may

have to be admitted if its exclusion would violate due process.  To

determine whether the exclusion of this evidence violated

Petitioner's due process rights, the Court considers a five-part

balancing test: (1) the probative value of the excluded evidence on

the central issue; (2) its reliability; (3) whether it is capable

of evaluation by the trier of fact; (4) whether it is the sole

evidence on the issue or merely cumulative; and (5) whether it

constitutes a major part of the attempted defense.  Miller v.

Stagner, 757 F.2d 988, 994 (9th Cir.), amended on other grounds,

768 F.2d 1090 (9th Cir. 1985).

As for probative value, at best, the evidence would have

undermined Ms. Huber's credibility.  The alleged conspiracy,

however, did not arise until months after the October 7, 1999

evidence sufficient to sustain a finding of the facts
specified in subdivisions (a) and (b) or, in the court's
discretion as to the order of proof, subject to the admission
of such evidence.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

garage incident, the subject of Petitioner's two remaining convictions.  As discussed above, there was sufficient evidence for these convictions without Ms. Huber's testimony.  Therefore, there is little, if any, probative value to the conspiracy evidence concerning the convictions now at issue.

The Court must also defer to the court of appeal's factual finding that the hearsay evidence was not reliable because there was no independent evidence of the conspiracy.  28 U.S.C. § 2254(e)(1); Sumner v. Mata, 449 U.S. 539, 546-47 (1981) (presumption of correctness of facts is the same even though the finding was made by a State court of appeals, rather than a trial court).  Assuming the trier of fact could evaluate the conspiracy evidence (the third prong of the test), Petitioner still fails to meet the fourth and fifth prongs of the test.

The excluded evidence was not the sole evidence of a conspiracy.  The trial court permitted Charlene Gallegos and Petitioner to testify about the claimed conspiracy.  (RT 305-16, 423).  The court also allowed defense counsel to cross examine Ms. Huber about the alleged conspiracy.  (RT 136-38).  Because this evidence of the conspiracy had been admitted, it was reasonable for the trial court to find further conspiracy evidence cumulative or irrelevant with respect to the garage incident.

The excluded evidence was not a major part of the defense. Petitioner's major defense with respect to the garage incident was a claim of self-defense.  Petitioner also denied injuring Ms. Huber, though he admitted to using his foot to push her away from him.  For a criminal defendant, raising doubt about the credibility

20

of the prosecution's main witness is often a strategy, yet here Ms. Huber's testimony was not the only obstacle to Petitioner's major defense.  In fact, the trial court commenting on the defense stated:  "And by the defendant's own testimony, he wasn't using it to protect himself.  He was using it in an effort to get the victim away from the garage, and that's not self-defense."  (RT 516). Therefore, the trial court did not rely on Ms. Huber's testimony to discount the self-defense claim.  Accordingly, the conspiracy evidence would not have constituted a major part of Petitioner's defense.

Finally, as the test prescribes, <u>Stagner</u>, 757 F.2d at 994, weighing the importance of the excluded hearsay evidence of a conspiracy against the State's interest in exclusion,[5] the Court finds that Petitioner's due process rights were not violated. Therefore, the appellate court's decision that the evidence was properly excluded was not an unreasonable application of federal law nor an unreasonable determination of the facts.

IV.  Admission of Evidence of Alleged Hand Gesture

In counts six and seven of the consolidated compliant, the prosecution charged Petitioner with intimidating a witness, alleging that while Ms. Huber was testifying at the preliminary hearing, Petitioner positioned his hands as if he were firing a gun at her.  Petitioner argues this count was improperly added to the case without a preliminary hearing and that the court erred in

---

[5] The State has a substantial interest in preserving orderly trials, judicial efficiency and in excluding unreliable or prejudicial evidence.  <u>Perry v. Rushen</u>, 713 F.2d 1447 (9th Cir. 1983), <u>cert. denied</u>, 469 U.S. 838 (1984).

considering evidence of the alleged hand gesture at trial.

Respondent counters that Petitioner may not seek habeas relief on

this charge because he was found not guilty.[6]  Respondent further

contends that Petitioner forfeited any claim by failing timely to

object to the hand gesture evidence.  Moreover, Respondent asserts

that Petitioner fails to show that the admitted evidence prejudiced

the court or denied him a fair trial.

Regarding Petitioner's claim, the California court of appeal

observed:

> In this case, no timely objection was made to exclude the
> evidence that [Petitioner] gestured to Ms. Huber at the
> preliminary hearing as if he were shooting a gun at her.
> Nor do we find that a miscarriage of justice has occurred.
> [Petitioner] was found not guilty of count seven and there
> is no indication in the record that this evidence impacted
> the court's other rulings.  [Petitioner's] convictions on
> count one and three were based on the garage incident . . .

People v. LaMothe, H023403, at 10.

Referring to California Evidence Code § 353,[7] the court of

---

[6] Without the support of case law, Respondent submits that,
because this charge was dismissed, Petitioner is not in custody
because of it, for purposes of § 2254.  The Court does not need to
resolve this because the Court denies relief on other grounds.

[7] Section 353 states:

A verdict or finding shall not be set aside, nor shall the
judgment or decision based thereon be reversed, by reason of
the erroneous admission of evidence unless:

(a) There appears of record an objection to or a motion to
exclude or to strike the evidence that was timely made and so
stated as to make clear the specific ground of the objection
or motion; and

(b) The court which passes upon the effect of the error or
errors is of the opinion that the admitted evidence should
have been excluded on the ground stated and that the error or
errors complained of resulted in a miscarriage of justice.

22

United States District Court
For the Northern District of California

appeal noted that California law requires a record of objection to preserve an issue for appellate review.  Because Petitioner did not object to the admission of evidence regarding the hand gesture, the court of appeal concluded that Petitioner had waived his right to challenge this evidence on appeal.

The federal courts have recognized and applied this California contemporaneous objection rule in affirming denial of a federal petition on grounds of procedural default.  See Ylst v. Nunnemaker, 501 U.S. 797, 799, 806 (1991); Vansickel v. White, 166 F.3d 953, 957-58 (9th Cir. 1999); see also Melendez v. Pliler, 288 F.3d 1120, 1125 (9th Cir. 2002) ("we held more than twenty years ago that the rule is consistently applied when a party has failed to make any objection to the admission of evidence").  In cases in which a petitioner has defaulted his federal claims in State court pursuant to an independent and adequate State procedural rule, federal habeas review of the claims is barred unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.  Coleman v. Thompson, 501 U.S. 722, 750 (1991).  A petitioner must establish factual innocence in order to show that a fundamental miscarriage of justice would result from application of procedural default.  Gandarela v. Johnson, 275 F.3d 744, 749-50 (9th Cir. 2002); Wildman v. Johnson, 261 F.3d 832, 842-43 (9th Cir. 2001).

Petitioner has not met this burden because he has failed to demonstrate cause for the default, actual prejudice or the factual

United States District Court
For the Northern District of California

innocence that is necessary to overcome the State procedural bar.
Indeed, after an independent review of the record, this Court found
sufficient evidence to sustain Petitioner's convictions.
Therefore, Petitioner's claim is legitimately barred.

Finally, the trial court dismissed counts six and seven
relating to the alleged hand gesture.  This evidence had no
significant factual or legal bearing on the convictions for counts
one and three.  Thus, even if the evidence of the alleged hand
gesture had been admitted erroneously, it did not have a
substantial and injurious effect on the verdict.

V.   Consolidation of Charges

Petitioner contends that the trial court erred in
consolidating charges stemming from two separate events, the garage
and freeway incidents.  Citing the California Penal Code section
954,[8] Petitioner claims that the charges do not meet the
requirements for consolidation and that the trial court
acknowledged the prejudicial effect of the consolidation.
Respondent argues that Petitioner failed to carry his burden to
prove actual prejudice that resulted in an unfair trial.

It is not for this Court to consider the State court's

_____

[8] Section 954 states, in pertinent part:

An accusatory pleading may charge two or more different
offenses connected together in their commission, or different
statements of the same offense or two or more different
offenses of the same class of crimes or offenses, under
separate counts, and if two or more accusatory pleadings are
filed in such cases in the same court, the court may order
them to be consolidated . . .

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

application of section 954 because a federal court may not grant a writ of habeas corpus based on "a perceived error of state law." <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984).  This Court may only determine whether the State court's joinder of Petitioner's offenses violated his federal constitutional rights.  <u>Jackson v. Ylst</u>, 921 F.2d 882, 885 (9th Cir. 1990).

Misjoinder violates the Constitution only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial.  <u>United States v. Lane</u>, 474 U.S. 438, 446 n.8 (1986).  Thus, habeas relief may be granted only if the joinder rendered Petitioner's trial "fundamentally unfair" and "violative of due process."  <u>Davis v. Woodford</u>, 333 F.3d 982, 991 (9th Cir. 2003) (quoting <u>Sandoval v. Calderon</u>, 241 F.3d 765, 771-72 (9th Cir. 2001)).

Regarding Petitioner's allegations of prejudice, the court of appeal noted:

> [Petitioner contends] that had the cases not been consolidated the court would not have convicted [Petitioner] of counts one and three arising from the garage incident.  [Petitioner] fails to realize that he admitted that he pepper sprayed Ms. Huber to get her out of the garage.  Thus, even if the two separately charged series of events had not been consolidated for trial [Petitioner] would have been convicted of corporeal injury on a spouse or cohabitant . . . and unauthorized use of tear gas . . . Thus, [Petitioner] has failed to show that he was prejudiced by the consolidation . . .

<u>People v. LaMothe</u>, H023403, at 12 (citations omitted) (alterations in original).

Despite the court of appeal opinion, Petitioner maintains that the charges relating to the freeway incident contaminated the trial judge's verdict on the charges relating to the garage incident.

United States District Court

For the Northern District of California

Specifically, Petitioner emphasizes what he regards as an admission of prejudice by the trial court.  Responding to Petitioner's denial of guilt after the verdict had been rendered, the court stated:

> The problem that you have, Mr. LaMothe, is that there is so many.  If there were just the single act, single act occurring in October, you might have had a much more credible position. But there is no basis that I could find to the continuing contact you had.

(RT 527-28).

Even if the consolidated charges had some influence on the trial court, their effect was insubstantial. In determining whether an error was harmless, the court does not "examine whether there was sufficient evidence to support the conviction in the absence of the constitutional error." Gent v. Woodford, 279 F.3d 1121, 1127 (9th Cir. 2002).  Rather, the court determines "whether the error had a 'substantial and injurious effect or influence'" on the trier of fact.  Id. (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).  Petitioner's credibility was fairly discounted by other evidence supporting his guilt, including police testimony and Petitioner's own admissions relating to the garage incident. Moreover, the trial court's ability to disregard irrelevant evidence was demonstrated by the fact that Petitioner was found not guilty of five counts.

Therefore, even if the charges should not have been tried together, any constitutional error was harmless.

VI.  Burden of Proof on Issue of Self-Defense

In regard to his claim of self-defense, Petitioner asserts the trial court erred by improperly placing the burden of proof on him. Petitioner explains that under California law the prosecution bears

26

the burden of proving, beyond a reasonable doubt, that self-defense does not apply. Respondent counters that in the absence of clearly established federal law concerning the burden of proof on self-defense, Petitioner may not be granted habeas relief. Respondent also argues that there was no evidence that the trial court placed the burden on Petitioner, but even if an error was made, it was harmless.

It is well-settled that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). However, "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required." Patterson v. New York, 432 U.S. 197, 210 (1977). Moreover, the Supreme Court has found that the burden to prove self-defense by a preponderance of the evidence may constitutionally be shifted to the defendant. Martin v. Ohio, 480 U.S. 228, 235 (1986).

Thus, Supreme Court precedent suggests that a defendant is not denied due process simply because the burden of proving self-defense by a preponderance of the evidence is placed on him. Thus, the State court of appeal's decision is not contrary to, or an unreasonable application of, clearly established federal law. Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004) (court refused to decide defendant's Sixth Amendment vicinage clause claim because Supreme Court had not defined the scope of defendant's rights). In essence, Petitioner is left with a claim of State law error, which is not cognizable in a federal habeas petition.

United States District Court
For the Northern District of California

1   <u>Estelle</u>, 502 U.S. at 67-68.   Therefore, the Court may not grant

2   Petitioner relief on this claim.

3                            CONCLUSION

4        For the forgoing reasons, the petition for writ of habeas

5   corpus is DENIED.

6        IT IS SO ORDERED.

7   Dated: 11/15/05

8

9                            _____

10                           CLAUDIA WILKEN
                             United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    28